**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BUFFALO PATENTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:22-cv-00621 |
| | ) | |
| MOTOROLA MOBILITY LLC, | ) | Judge Charles P. Kocoras |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**<u>DEFENDANT MOTOROLA MOBILITY LLC'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS</u>**

# TABLE OF CONTENTS

**Pages**

I.     Summary of Argument .................................................................................1

II.    Factual Summary ......................................................................................3

      A.    Summary of the VOIP Patents...............................................................3

      B.    Claims of the VOIP Patents ....................................................................5

III.   Legal Standard .........................................................................................7

      A.    Rule 12(c) Is the Proper Procedural Vehicle to Dismiss Counts I-IV ...................7

      B.    Patent-Ineligible Subject Matter under Section 101 of the Patent Act ...................7

IV.   Argument ...............................................................................................9

      A.    *Alice* Step 1: The Claims Are Directed to An Abstract Idea ...............................10

      B.    Under *Alice* Step 2, The Claims Lack an Inventive Concept ..............................14

V.    Conclusion ...........................................................................................16

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*A. Zahner Co. v. Hendrick Metal Prods, LLC*,
  328 F. Supp. 3d 870 (N.D. Ill. 2018) ........................................................... 7

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013) ................................................................ 6

*Adaptive Streaming Inc. v. Netflix, Inc.*,
  836 F. Appx. 900 (Fed. Cir. 2020) ...................................................... 11, 12

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016) ................................................................ 9

*Alice Corp. Pty. Ltd. v. CLS Banks Int'l*,
  573 U.S. 208 (2014) ..................................................................... *passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................. 7

*Atos, LLC v. Allstate Ins. Co.*,
  2021 WL 6063963 (N.D. Ill. Dec. 22, 2021) ............................................... 7

*British Telecommunications PLC v. IAC/InterActiveCorp*,
  381 F. Supp. 3d 293 (D. Del. 2019) .................................................... 14, 15

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
  859 F.3d 1352 (Fed. Cir. 2017) ................................................................ 7

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014) ........................................................ 6, 8, 14

*Dealertrack, Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012) .............................................................. 15

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) .......................................................... 8, 15

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) .............................................................. 10

*In re TLI Commc'ns LLC Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) ...................................................... 9, 10, 11

*Intell. Ventures I LLC v. Cap. One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015) ............................................................ 8

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015) ............................................................ 8

*IPA Techs., Inc. v. Amazon.com, Inc.*,
   307 F. Supp. 3d 356 (D. Del. 2018) ..................................................... 10

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
   566 U.S. 66 (2012) ............................................................................ 2, 8

*Realtime Data LLC v. Array Networks Inc.*,
   537 F. Supp. 3d 591 (D. Del. 2021) ..................................................... 7

*RecogniCorp, LLC v. Nintendo Co.*,
   855 F.3d 1322 (Fed. Cir. 2017) ......................................................... 8, 14

*SAP America, Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) ............................................................ 3

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017) .............................................................. 7

*Simio, LLC v. FlexSim Prods., Inc.*,
   983 F.3d 1353 (Fed. Cir. 2020) ................................................. 10, 12, 13

*Two-Way Media Ltd. v. Comcast Cable Comms., LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) .................................................... *passim*

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) .............................................................. 7

**Statutes**

35 U.S.C. § 101 ....................................................................................... 1, 7

**Rules & Regulations**

Fed. R. Civ. P. 12(b)(6) ............................................................................... 7

Fed. R. Civ. P. 12(c) ............................................................................... 1, 7

Defendant Motorola Mobility LLC ("Defendant") moves for partial judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Defendant seeks judgment in its favor on four of the five counts of the Complaint because Counts I-IV assert infringement of patent claims that are patent-ineligible under 35 U.S.C. § 101 ("Section 101"). It is well-settled that patent claims reciting abstract ideas may be addressed and found invalid on the pleadings alone. Accordingly, for at least the reasons below, Defendant respectfully requests that the Court find that the claims at issue in Counts I-IV are invalid for reciting patent-ineligible subject matter, and dismiss those Counts, which will narrow the patents and claims at issue in this case.

## I.      Summary of Argument

Plaintiff Buffalo Patents, LLC ("Plaintiff") asserts five patents. The first four patents[1] (the "VOIP Patents") are related to each other, and are the subject of Counts I-IV. D.I. 1. The VOIP Patents claim "methods and systems for transmitting voice information to an end user in a digital format based on a network protocol." D.I. 1, ¶ 9. The VOIP Patents claim the abstract idea of sending audio data contained in one packet that is addressed according to one format, where that packet in turn is contained within a second packet that is addressed according to a second format. D.I. 1-1, 8:54-58.

The purported invention claimed here thus amounts to sending a data packet within another data packet wirelessly and then over the Internet. As the VOIP Patents acknowledge, data packets are nothing more than envelopes -- ubiquitous mechanisms of transmitting digital data that routinely carry other packets of data. *Id.*, 1:15-18. Thus, the claimed invention is akin to sending

---

[1]Counts I-IV respectively assert U.S. Patent Nos. 7,187,670 ("the '670 Patent") (D.I. 1-1); 7,408,915 ("the '915 Patent") (D.I. 1-2); 8,611,328 ("the '328 Patent") (D.I. 1-3); and 9,001,816 ("the '816 Patent") (D.I. 1-4). All four patents share a common specification, so all specification citations herein are to the '670 Patent. They are defined as the VOIP Patents because they relate to the well-known Voice Over Internet Protocol used for communication between digital devices.

an envelope addressed to the Courthouse, with a second envelope inside the first that is addressed to a specific Judge's Chambers. In this example, the first envelope would be addressed according to conventional mailing address protocols, e.g., the business address of the Courthouse, whereas the second envelope within the first is addressed according to internal protocols, e.g., the Judge's name and Chambers information, such as a specific room number.

Further, the purported invention contains no new machine or new way of using old machines, as the law requires to avoid invalidity under Section 101. Rather, the claims generically recite well-known and conventional "means" for converting sound to digital data and then (1) placing that data into packets (envelopes) for transmission over the Internet; and (2) placing those packets into other packets (envelopes) that can be sent via standard wireless transmission protocols, such as Bluetooth, WiFi, or the like. *See*, *e.g.*, Claim 1 of the '670 Patent; D.I. 1-1, Col. 13. In other words, they use standardized equipment and conventional functions to convert data from one form to another and package that data for transmission using standard protocols.

Under the *Mayo/Alice* framework for determining whether something is patent-eligible under Section 101, these claims fail. *See Alice Corp. Pty. Ltd. v. CLS Banks Int'l*, 573 U.S. 208, 217-18 (2014) ("In *Mayo*, … we set forth a framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts. First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, '[w]hat else is there in the claims before us?' …. We have described step two of this analysis as a search for an 'inventive concept.'"); *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 77-80 (2012) (Section 101 "contains an important implicit exception" for "laws of nature, natural phenomena, and abstract ideas").

Courts are encouraged to resolve patent eligibility questions on the pleadings where, as here, it is readily apparent that the asserted claims are patent-ineligible. *SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) (upholding district court's finding that claims are patent-ineligible on motion for judgment on the pleadings). No discovery or claim construction ruling is necessary to confirm the VOIP Patents claim the abstract idea of embedding one packet in another packet, without any inventive additions. Every claim of the VOIP Patents is patent ineligible, and the Court should grant judgment in Defendant's favor as to Counts I-IV.

## II. Factual Summary

On February 4, 2022, Plaintiff filed the instant Complaint asserting infringement of the VOIP Patents and one other patent by Defendant. D.I. 1. Notably, the Complaint does not plead any factual allegations that the VOIP Patents claim patent-eligible subject matter.

### A. Summary of the VOIP Patents

The '670 Patent was filed in September of 2001, and is the parent application for the other three VOIP Patents, which all share the same specification and figures, and are generally directed to formatting and transmitting audio signals to a desired receiver over a wireless network. *See, e.g.*, D.I. 1-1, 7:1-9. More specifically, the VOIP Patents describe a portable communications terminal that utilizes the Internet to make and receive telephone calls in any location where there is Internet/network access (a system known as IP telephony). *Id.* at 3:63-65. The VOIP Patents describe IP telephony as a low-cost alternative to ordinary telephone systems, and state that IP telephony systems convert "speech information into and from a suitable digital format, which is divided into data packets that are transported via the Internet." *Id.* at 1:13-17. The VOIP Patents further describe that IP telephony systems send data packets according to standard Internet/network protocols to an intermediary (a "connecting unit" or "server") on the

3

Internet/network, which can then pass the information in the data packets to the desired receiver. *Id.* at 4:40-49. Thus, users can make telephone calls without a cellular network. *Id.* at 4:6-12.

The VOIP Patent claims are directed to the abstract idea of embedding one data packet formatted for Internet transmission (an IP data packet) into a second data packet formatted for wireless transmission to a router (wireless transmission packet), which unpacks the IP data packet from the wireless packet and sends the IP packet across the Internet. The description summarizes the abstract concept noting digitized audio data is "embedded in a transmission format in accordance with wireless communication protocol e.g. also embedded in packet format." *Id*., 8:54-58. The claims do not specify what components are used for the claimed data conversion, transmission, or reception, and the specification only identifies a generic computer with the following components, each of which simply performs its conventional, well-known function:

| Converting means | A component that takes audio files and turns them into a digital format that can be transmitted electronically (or coverts digital to sound). D.I. 1-1, 8:7-17. |
|---|---|
| Protocol means | A general purpose microprocessor that places the digital file into a packet to transmit the data across the Internet (or unpacks the digital file from the packet). *Id.* at 8:35-39. |
| Wireless communications means | A transceiver connected to wireless devices that places the packets for transmission over the Internet into wireless transmission packet (or unpacks the wireless packet. *Id*., 8:59-65. |

Nowhere do the VOIP Patents describe "audio means," "converting means," "protocol means," or "wireless communications means" as any ***specialized*** component, structure, or method for performing the functions described. Nor do the VOIP Patents describe the steps necessary to perform these standardized functions. In fact, the VOIP Patents describe numerous well-known prior art devices capable of digitizing audio data and transmitting it wirelessly (*id*., 1:19-2:44) and are wholly agnostic as to the technology used to implement the basic idea: one packet containing audio data is embedded in a second packet in a wireless transmission format. *Id*., 8:54-58.

B.    **Claims of the VOIP Patents**

The VOIP Patents all claim the same patent-ineligible subject matter in similar terms. For

example, Claim 8 of the '328 Patent recites the abstract idea by simply stating:

> A method comprising:
>
> converting a first signal representing detected sound to first digital data;
>
> converting the first digital data into one or more first data packets that accord to a
> network protocol of a first network;
>
> embedding the one or more first data packets into first wireless data that accords
> to a network protocol of a new field communication network; and
>
> transmitting the first wireless data via the near field communication network in
> accordance with the network protocol of the second network.

D.I. 1-3, 13:19-30.

> Likewise, claim 1 of the '816 patent recites the same abstract idea as an apparatus:
>
> a wireless component configured to receive, via a near field network, wireless
> data that is formatted according to a first network protocol, wherein the wireless
> data comprises a data packet formatted according to a second network protocol,
> and wherein the wireless unit is further configured to extract the data packet from
> the wireless data; and
>
> an audio component configured to generate a sound based on the data packet.

D.I. 1-4, 12:52-61.

> Claim 13 of the '670 Patent, while more verbose than the other claims, merely recites a

method comprising the same steps using generic "means" for performing generic processing:

> converting said electrical signal into transmission data, representing sound for
> transmission, in a suitable data format, and converting received data, representing
> received sound, in said suitable data format into said first electrical signal, by
> converting means, and
>
>                               ***
> handling/controlling communication by said received and transmission data in
> accordance *with a standardized network protocol and embedding and extracting*
> *said transmission and received data, in/from a first data packet format*
> *according to said standardized network protocol*, by protocol means,

receiving/sending by wireless near field communication means, of said received data or said transmission data in said first data packet format from/to said protocol means, ***embedding said transmission data in said first data format received from said protocol means in a wireless second data format and extracting said received data in said first data format from said wireless second format***, communicating, by said wireless near field communication means of said received data or said transmission data embedded in said wireless second data format with a connecting unit communicating in said wireless second data format with a connecting unit communicating in said wireless second data format and to establish a connection to a network according to said standardized network protocol, whereby ***the resulting data exchange between the wireless near field communication means and the connecting unit consists of packets in said first data packet format embedded in said wireless second data format***.

D.I. 1-1, 15:35–16:2 (emphasis added).

Claim 17 of the '915 Patent again recites the same concept, but specifies a well-known data packet format for use in the wireless leg of the packet journey: "the wireless near field communications means embedding said transmission data in said data packet format received from said protocol means in a WiFi or IEEE 802.11 format…." D.I. 1-2, 14:28-60.

The VOIP Patents claim both ***apparatuses*** (or things) for performing data transmission (system claims) and ***methods*** (or steps) for performing data transmission (method claims). But this claim structure difference does not change what the claims cover or this analysis. "[S]ystem claims that closely track method claims and are grounded by the same meaningful limitations will generally rise and fall together." *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013); *Alice*, 573 U.S. at 226 ("the system claims are no different from the method claims in substance"). Further, courts can fully resolve issues under Section 101 based on "representative claims" where the remaining claims are "substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348-49 (Fed. Cir. 2014) (citation omitted). Here, the four claims recited above all contain the operable language of every claim of the VOIP patents: inserting audio data into a first

6

data packet having a protocol addressed in one format and then placing that first packet inside a second data packet having a protocol addressed in a second format.

## III.    Legal Standard

### A.    Rule 12(c) Is the Proper Procedural Vehicle to Dismiss Counts I-IV

Patent eligibility may be properly resolved on the pleadings. *See, e.g.*, *A. Zahner Co. v. Hendrick Metal Prods, LLC*, 328 F. Supp. 3d 870, 878 (N.D. Ill. 2018) (holding claims invalid for claiming ineligible subject matter on motion for judgment on the pleadings); *Atos, LLC v. Allstate Ins. Co.*, 2021 WL 6063963, *5-6 (N.D. Ill. Dec. 22, 2021). The Federal Circuit has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery." *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017). "Resolving eligibility on the pleadings minimizes 'expenditure of time and money by the parties and the court' and 'protects the public' from illegitimate patents." *Realtime Data LLC v. Array Networks Inc.*, 537 F. Supp. 3d 591, 605 (D. Del. 2021) (quoting *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014)).

A motion for judgment on the pleadings is governed by the same standards as a Rule 12(b)(6) motion. *Zahner*, 328 F. Supp. 3d. at 878. While the pleadings are construed in a light most favorable to the non-moving party, the Court need not accept threadbare recitals supported by mere conclusory allegations. *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Specifically, "a court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (citation omitted).

### B.    Patent-Ineligible Subject Matter under Section 101 of the Patent Act

As the Supreme Court confirmed in *Alice*, "[l]aws of nature, natural phenomena, and abstract ideas" are not patent eligible under Section 101. 573 U.S. at 216. Under *Alice*, courts must

apply a two-step framework "for distinguishing patents that claim…abstract ideas from those that claim patent-eligible applications of those concepts." *Id*. at 217.

*Alice* step one requires determining "whether the claims at issue are directed to a patent-ineligible concept." *Id*. at 218; *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). This requires "looking at the 'focus' of the claims, their 'character as a whole,'" to determine if they are directed to excluded subject matter, such as an abstract concept. *Id*., at 1353. "The inquiry often is whether the claims are directed to 'a specific means or method' for improving technology *or whether they are simply directed to an abstract end-result*." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (citation omitted) (emphasis added). Likewise, "[c]laims directed to generalized steps to be performed on a computer using conventional computer activity are not patent eligible." *Two-Way Media Ltd. v. Comcast Cable Comms., LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (citing *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)). Further, claims that describe concepts "long-practiced" have been found directed to abstract ideas under *Alice* step one. *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1369-70 (Fed. Cir. 2015).

*Alice* step two requires looking at whether there is an "'inventive concept' sufficient to 'transform' the claimed abstract into a patent-eligible application." *Alice*, 573 U.S. at 221 (quoting *Mayo*, 566 U.S. at 73). There is nothing inventive about implementing an abstract idea using "well-understood, routine, conventional activit[ies] previously known to the industry." *Id*. at 225 (alternation in original) (citation omitted). Further, claims limited to a particular environment does not add any inventive concept. *Content Extraction*, 776 F.3d at 1348. Rather, "an inventive concept must be evident in the claims." *RecogniCorp*, 855 F.3d at 1327.

## IV.    Argument

The VOIP Patents claim an abstract idea without adding the requisite "something more" required for a valid claim under the two-part *Alice* test. *Alice*, 573 U.S. at 217. First, the claims, whether articulated as a method or system, require nothing more than: (1) putting an audio file into a first data packet for Internet transmission; and (2) placing that first packet in a second packet for wireless transmission. *See, e.g.*, '670 Patent, cl. 13; '915 Patent, cl. 17; '328 Patent, cl. 8; '816 Patent, cl. 1. Again, this is simply the idea of sending a letter to a specific judge at the Courthouse by (1) placing the letter in an envelope addressed to that judge's Chambers, and (2) placing that envelope inside another envelope addressed to the Courthouse. Moreover, the subject of these claims is consistent with what other courts typically find to be an abstract idea.

Second, neither the claims nor the specification provide any specifics, limits, or bounds as to how the abstract idea of data manipulation and transmission is accomplished; they recite only generic components that function in their common and conventional manner to arrive at precisely how the specification sums up its purported invention—placing one standardized packet inside another. *See* D.I. 1-1, 8:54-58 (describing how "the IP packets are embedded in a transmission format in accordance with wireless communication protocol."). As such, the claims recite an abstract idea using functional language and reference to generic computer components, which is insufficient to make the claims patent-eligible. *See, Two-Way Media*, 874 F.3d at 1338 ("the use of generic computer components to carry out the recited abstract idea … is not sufficient"); *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016) ("The features set forth in the claims are described and claimed generically rather than with the specificity necessary to show how those components provide a concrete solution to the problem addressed by the patent."); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (despite

reciting "concrete, tangible components," claims ineligible where "the physical components merely provide[d] a generic environment in which to carry out the abstract idea").

### A. *Alice* Step 1: The Claims Are Directed to An Abstract Idea

Under *Alice* step one, there is no specific definition of "abstract idea." Rather, the Federal Circuit and Supreme Court "have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). "And where, as here, 'the abstract idea tracks the claim language and accurately captures what the patent asserts to be the focus of the claimed advance…, characterizing the claim as being directed to an abstract idea is appropriate.'" *Simio, LLC v. FlexSim Prods., Inc.*, 983 F.3d 1353, 1360 (Fed. Cir. 2020). Indeed, when the alleged invention implements known practices in a new environment, a claim is drawn to an abstract idea unless the invention is a solution to a problem created by combining the practices with the new environment. *Id*. But that is not the case here.

The claims of the VOIP Patents are directed to the abstract idea of (1) packaging audio data into a first data packet having a first standardized transmission format; and then (2) packaging the first data packet into a second data packet having a second standardized transmission format. D.I. 1-1, 8:54-58. This is nothing more than the known practices of collecting, processing, converting, and transmitting data, which courts have repeatedly found ineligible. As the specification acknowledges, "[t]he wireless connection is just used for transferring the data packets to the connecting unit in an expedient manner." *Id*., 3:38-47. Use of known data manipulation techniques is consistently found ineligible as abstract. For example, in *IPA Techs., Inc. v. Amazon.com, Inc.*, converting audio data to digital format and then transmitting the digitized data to a user were found patent ineligible. 307 F. Supp. 3d 356, 368 (D. Del. 2018). Similarly, in *In re TLI Communications LLC Patent Litigation*, the Federal Circuit found claims directed to recoding digital images,

transmitting the recoded data, receiving and classifying the data, and storing the data based on its classification to be an abstract idea. 823 F.3d 607, 611-12 (Fed. Cir. 2016) (claims "are directed to the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two"). The same result should be reached here.

Further, packaging a first data packet into a second data packet is merely encoding the audio data into multiple formats,[2] which the Federal Circuit has also found to be patent ineligible. In *Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. Appx. 900 (Fed. Cir. 2020), the Federal Circuit found ineligible claims to "systems that can receive a video signal in one format and broadcast it to at least one device calling for a different format." *Id.* at 901. As the Federal Circuit found, "basic communication practices," such as "the ideas of encoding and decoding image data and of converting formats, including when data is received from one medium and sent along through another, are by themselves abstract ideas." *Id.* at 904.

The logic of these holdings compels the same conclusion here. The claims of the VOIP Patents recite transmitting audio data in packets across a network and encoding data in multiple formats. They do not claim an improvement to the creation, transmission, or receipt of such data packets or performance of those functions. Nothing in the specification suggests the claims extend beyond known, common, standardized practices. To the contrary, the specification admits that all of the components are conventional and the methods of receiving, interpreting, and performing the

---

[2]Encoding audio data is the process where data is put into a standardized, compressed digital form for transmission that will be understood by devices that send or receive data. *See*, *e.g.*, D.I., 1-1, 8:18-28. This is further summarized above at p. 3, in discussing the claimed "converting means."

function are conventional. *Supra* § II.A. And nothing suggests the use of known practices in a new environment somehow overcame a problem in using the know practices.

In fact, the specification admits systems existed where a device wirelessly transmitted audio data to a base station, which in turn transmitted that data using the IP protocol. *Id.*, 1:64-2:20. These prior art systems packaged audio data into a data packet of a first format which was sent to a base station and then packaged that data packet into a packet of a second format using the IP protocol, just as the patent claims here would function. *Id.* And the alleged improvement of the VOIP Patents over these prior art systems—the removal of "specialized equipment"—is not recited in any of the VOIP Patents' claims. Rather, the claims do not require any particular equipment and instead broadly and generically recite the concept performed in a mechanism-agnostic manner. This confirms the claims' abstract nature. *See Simio*, 983 F.3d at 1360 ("[T]he abstract idea tracks the claim language and accurately captures what the patent asserts to be the focus of the claimed advance.") (citations omitted).

Likewise, while the specification asserts a wireless cellular connection between a terminal (mobile device) and a base station to transmit the audio data over IP protocol may be disadvantageous because it "requires a greater power source adding to the minimum size of a device with a useful time-span between re-charge," the claims do not require any specialized method or component for transmission that addresses this problem. *Id.*, 2:33-43. Rather, they only recite "wireless communication means," which the specification describes generically as radio-frequency protocol, Bluetooth protocol, infrared protocol, "***or another wireless communications protocol***." *Id.*, 7:14-21. Thus, the claims are agnostic as to how the generic function of putting one data packet inside another for transmission is accomplished. *See, Simio*, 983 F.3d at 1360.

And as the specification further makes clear, each of the data manipulation steps or generic "means" for performing the data manipulation was known:

> The conversion of sound to a digital data packet was **known**. *Id*., 8:7-22 ("The converting means [] comprise A/D and D/A converters and/or a codec (coder and decoder) for converting between analog and digital sound.").

> Placing audio data in a data packet for Internet transmission was **known**. *Id*., 8:29-44 ("protocol means []/protocol stack which provide for the handling of data/information in connection with transmission and reception of data. The protocol which is preferably used is the TCP/IP….").

> Wireless transmission of data in packets over RF, Bluetooth, or WiFi was **known**. *Id*., 8:45-65 ("the communication mean [] use an RF (Radio Frequency) connection in accordance with e.g. Bluetooth, DECT, IEEE802.11 or other wireless protocols").

Yet the VOIP Patents broadly claim the idea of placing audio data in data packets that are placed within another data packet for transmission. Neither the claims nor the specification address "how" this is done, other than the use of standardized protocols, or how the wireless transmission of IP packetized data in these claims is any different than the well-known concept of wireless data transmission. *Simio*, 983 F.3d at 1360. This confirms the claims are directed to an abstract idea.

The functional language in the claims likewise confirms they are directed to an abstract idea rather than patent-eligible subject matter. The Federal Circuit in *Two-Way Media* found similar functional claims to be abstract. The claims there recited a method of transmitting packets of information over a communications network comprising: converting information into streams of digital packets; routing the streams to users; controlling the routing; and monitoring the reception of packets by the users merely recited a series of abstract steps ("converting," "routing," "controlling," "monitoring," and "accumulating records") using "result-based functional language" without the means for achieving any purported technological improvement. 874 F.3d at 1336-37 (citation omitted). The court held them to be invalid under *Alice*. *Id*. at 1338. That is precisely how the claims here are worded: "converting said electrical signal into transmission

13

data"; "handling/controlling communication…in accordance with standardized network protocol"; "receiving/sending, by wireless near field communication means, of said received data." D.I. 1-1, cl. 13; *see also* '915 Patent, cl. 17; '328 Patent, cl. 8; '816 Patent, cl. 1. Like the claims in *Two-Way*, the claims here broadly recite results-based language without any specific way to achieve a technological improvement.

### B.     Under *Alice* Step 2, The Claims Lack an Inventive Concept

There is nothing inventive about implementing an abstract idea using "well-understood, routine, conventional activit[ies] previously known to the industry." *Alice*, 573 U.S. at 225 (alteration in original) (citation omitted). Further, limiting a claim to a particular environment does not add any inventive concept to save an abstract claim. *Content Extraction*, 776 F.3d at 1348. "To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp*, 855 F.3d at 1327. Here, whether considered individually or as an ordered combination, the claim limitations impart no inventive concept.

The claims recite the following generic components and functions:

(1) "converting means" for "converting received data, representing received sound, in said suitable data format into said first electrical signal" (D.I. 1-1, 15:40-45);

(2) "protocol means" for "embedding and extracting said transmission and received data, respectively, in/from a first data packet format according to standardized network protocol" (*Id.*, 15:46-50); and

(3) "wireless near field communication means" for "embedding said transmission data in said first data format received from said protocol means in a wireless second data format and extracting said received data in said first data format from said wireless second format" (*Id.*, 15:52-59).

Components recited in purely functional terms and described in the specification as general-purpose computer parts known to do these functions (*see, e.g.*, D.I. 1-1, 8:42-44 ("The protocol means [] may e.g. be comprised by a special- and/or general purpose microprocessor, logic circuit, etc.")) do not provide an inventive concept. *See British Telecommunications PLC v.*

14

*IAC/InterActiveCorp*, 381 F. Supp. 3d 293, 316-71 (D. Del. 2019) (holding claims ineligible because the described data visualization tool was not inventive and techniques described in specification were known).

Courts also routinely invalidate patents where, as here, the conventional computer elements lack any special or inventive programming to implement the claimed methods and systems. *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (finding a patent invalid where it "does not specify how the computer hardware and database are specially programmed to perform the steps claimed" (citation omitted)). Similarly, in *Two-Way* the Federal Circuit found claims ineligible because "the claim refers to certain data 'complying with the specifications of a network communication protocol' and the data being routed in response to one or more signals from a user, without specifying the rules forming the communication protocol or specifying parameters for the user signals." 874 F.3d at 1339.

The VOIP Patent claims further are silent as to any non-generic way in which the first packet or the second packet are created. Instead, the claims confirm these steps are performed by conventional computer components "according to said standardized network protocol" or "wireless second data format." D.I. 1-1, cl. 13. Creating data packets using protocols that the claims admit were "standardized" is not inventive. "Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology" for transmitting and receiving a data file. *Elec. Power*, 830 F.3d at 1355.

In sum, the claims[3] of the VOIP Patents use only well-known components and techniques to create data packets and lack any inventive concept, making them ineligible under *Alice* step two.

---

[3]Nothing in the dependent claims changes this analysis. For example, claim 14 of the '670 Patent merely adds that the first protocol is the well-known standard TCP/IP, which is insufficient to save the claim. *See British Telecom.*, 381 F. Supp. 3d at 317-18.

V.    **Conclusion**

Motorola Mobility respectfully requests judgment on the pleadings as to Counts I-IV.

Dated: June 8, 2022                     Respectfully submitted,

                                        */s/ D. Clay Holloway*
                                        D. Clay Holloway (*Pro Hac Vice*)
                                        Steven D. Moore (*Pro Hac Vice* application pending)
                                        Michael Morlock (*Pro Hac Vice* application pending)
                                        Courtney S. Dabbiere (*Pro Hac Vice* application
                                        pending)
                                        Kathleen R. Geyer (*Pro Hac Vice* application
                                        pending)
                                        KILPATRICK TOWNSEND & STOCKTON LLP
                                        1100 Peachtree St. NE, Suite 2800
                                        Atlanta, GA 30309
                                        Tel: (404) 815-6500
                                        Fax: (404) 815-6555
                                        cholloway@kilpatricktownsend.com
                                        mmorlock@kilpatricktownsend.com
                                        cdabbiere@kilpatricktownsend.com
                                        kgeyer@kilpatricktownsend.com

                                        Attorneys for Defendant,
                                        Motorola Mobility LLC