IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BUFFALO PATENTS, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MOTOROLA MOBILITY LLC, ) <br> ) <br> Defendants. ) <br> ) <br> ) | Case No.: 1:22-cv-00621 <br><br> Judge Charles P. Kocoras |

**DEFENDANT MOTOROLA MOBILITY LLC'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

**Pages**

I.   The Asserted Claims Are Drawn to Abstract Ideas, Not Specific, Described Improvements. ...............................................................................................................1

    A.   The Claims and Specification Do Not Provide Specific Structures Resulting in an Improvement to Computer Functionality................................................................2

        1.   The Claims Recite Only Conventional Components. ................................3

        2.   The Alleged "Improvement" Is Not the Claimed Invention, and the Claims Required "Specialized Equipment" in the Form of a Connecting Unit. ......4

    B.   The Claims of the VOIP Patents Differ from Claims Upheld by the Federal Circuit. ....................................................................................................................6

II.  The Claims Are Not Drawn to an Inventive Concept...........................................................8

III. Buffalo's Other Arguments Fail. .........................................................................................9

IV.  Conclusion ........................................................................................................................10

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Banks Int'l*,
 573 U.S. 208 (2014) ................................................................................................. 6, 8, 9

*Chamberlain Grp., Inc. v. Linear LLC*,
 114 F. Supp. 3d 614 (N.D. Ill. 2015) ................................................................................ 8

*Content Extraction & Transmission, LLC v. Wells Fargo Bank. Nat'l Ass'n*,
 776 F.3d 1343 (Fed. Cir. 2014) ........................................................................................ 9

*CosmoKey Sols. GmbH & Co. KG v. Duo Sec., LLC*,
 15 F.4th 1091 (Fed. Cir. 2021) ......................................................................................... 8

*Internet Pats. Corp. v. Active Network, Inc.*,
 790 F.3d 1343 (Fed. Cir. 2015) ........................................................................................ 1

*Perfect Web Techs., Inc. v. InfoUSA, Inc.*,
 587 F.3d 1324 (Fed. Cir. 2009) ........................................................................................ 3

*Restricted Spending Sols., LLC v. Allow Card of Am., Inc.*,
 743 F. Supp. 2d 954 (N.D Ill. 2010) ................................................................................ 3

*SRI Int'l, Inc. v. Cisco Systems, Inc.*,
 930 F.3d 1295 (Fed. Cir. 2019) ........................................................................................ 7

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
 874 F.3d 1329 (Fed. Cir. 2017) ........................................................................................ 1

*Uniloc USA, Inc. v. LG Electronics USA, Inc.*,
 957 F.3d 1303 (Fed. Cir. 2020) ................................................................................... 6, 7

Plaintiff Buffalo Patents LLC's ("Buffalo") Response to Defendant's Motion for Partial Judgment on the Pleadings (Dkt. 47, the "Response") fails to rebut Motorola's showing that the VOIP Patents[1] recite ineligible subject matter. Buffalo repeatedly declares—without support from the patents themselves—that the claims recite something other than generic arrangements of known components to transmit audio data packets. Buffalo's unsupported assertions cannot save claims that cover nothing more than an ineligible implementation of an abstract idea.

I.  **The Asserted Claims Are Drawn to Abstract Ideas, Not Specific, Described Improvements.**

Despite asserting that the claims and specification "reflect . . . concrete, technical solutions" (Resp. at 6) for providing telephony over the Internet, the only improvement Buffalo alleges its invention provides is eliminating the need for specialized equipment. Indeed, as Buffalo explains, the invention merely replaces specialized equipment with conventional equipment (*Id*. at 4 ("the VO-WiFi patents used *existing equipment*")) and uses that conventional equipment precisely as it was intended to be used. *Id*. at 3 ("The inventors' solution . . . offer[ed] a simpler design and eliminate[ed] the need for specialized equipment."). Thus, Buffalo suggests, without support and in circular fashion, that the claimed invention's use of "conventional" computer components makes the claimed invention "unconventional."

But claiming the use of conventional equipment according to its intended purpose is *exactly* what the Federal Circuit has repeatedly found ineligible. "Claims directed to generalized steps to be performed on a computer using conventional computer activity are not patent eligible." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (citing *Internet Pats. Corp. v. Active Network, Inc*., 790 F.3d 1343, 1346 (Fed. Cir. 2015)). Moreover,

---

[1] U.S. Patent Nos. 7,187,670 ("the '670 Patent") (D.I. 1-1); 7,408,915 ("the '915 Patent") (D.I. 1-2); 8,611,328 ("the '328 Patent") (D.I. 1-3); and 9,001,816 ("the '816 Patent") (D.I. 1-4).

none of the claims recites anything unconventional or an improvement over the prior art. To the contrary, as Motorola explained in its Opening Brief, the claims do not require any particular equipment and instead broadly and generically claim the concept performed in a mechanism-agnostic manner. Motion at 16. Further, the specification precludes any suggestion that the claimed invention actually provides the alleged improvement—eliminating the need for specialized equipment—by making clear such specialized equipment is still needed.

      A.    **The Claims and Specification Do Not Provide Specific Structures Resulting in an Improvement to Computer Functionality.**

Throughout the Response, Buffalo asserts Motorola is over-generalizing the invention and analogizing the concept to a fictitious phenomenon by repeatedly asking "Who sends a letter inside an envelope inside another envelope?" Buffalo misses the point. Motorola's analogy simply illustrates the broad concepts claimed in the VOIP Patents. Motorola is not asserting that the claims here are merely computerizing a known process. Motion at 9. Rather, Motorola explained in layman's terms how data packets work in an entirely conventional manner: audio data is put in a first packet configured to work on the Internet and then placed in another packet configured to work wirelessly. Buffalo does not dispute that this was known or conventional functionality. Nor can it, given the specification acknowledges it. '670 Patent at 2:33-43 (describing a prior art "mobile communications terminal for receiving IP-based audio content via a single call connection. [And] [v]oice communication using IP or other Internet protocols.").

In any event, an envelope inside another package is quite common. In addition to the Courthouse example, this concept is nothing more than the well-known practice of inter-office mail between organizations with multiple offices. In such an inter-office mail system, individual envelopes are shipped between offices in a larger package. When the larger package arrives, individual envelopes are then routed to their specific recipient. Buffalo's feint that "Motorola

2

cannot point to a single example of anyone using its counterintuitive technique" (Resp. at 2) ignores everyday reality. *Restricted Spending Sols., LLC v. Allow Card of Am., Inc.*, 743 F. Supp. 2d 954, 958 (N.D Ill. 2010) ("[W]here the technology at issue in a patent is 'easily understandable,' the court may judge the validity of a claim without recourse to expert testimony regarding the state of knowledge among those with ordinary skill in the art." (citation omitted)); *see also Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009).

Buffalo next attempts to hide the abstract nature of its claims by arguing that the VOIP Patents describe and claim specific, ordered elements that resulted in an improvement to computer functionality. Resp. at 5. As shown below, Buffalo's arguments are contradicted by both the claims and the specification.

### 1. The Claims Recite Only Conventional Components.

Buffalo asserts "the specification and claims recit[e] specific structures and methods to carry out the invention." Resp. at 7. But Buffalo never points to such specific structures. The claims all require, at most, four elements or steps, two of which Buffalo acknowledges are irrelevant to this issue. *See* Resp. at 11 ("Although the VO-WiFi patents have elements that related to 'convert[ing] data from one form to another'. . . the focus of the specification and claims is beyond ***the simple steps of converting and packaging data*** . . . ." (emphasis added)). Thus, Buffalo relies on only two claim elements: the protocol means and wireless transmission means. But to confer eligibility, those elements must be specific structures the combination of which is an improvement over the prior art. *Id.* at 7 ("specific structures, like the protocol means and wireless communications means"). They are not.

As detailed in the Motion, these are means-plus-function claim terms that merely recite a function under 35 U.S.C. § 112(f), and do not point to any specific structure or manner in which the audio data is put into Internet protocol packets and subsequently into wireless transmission

packets. Motion at 4. The specification makes this clear: "[t]he ***protocol means (103)*** may e.g. be comprised by a special- and/or general purpose microprocessor, logic circuit, etc." ('670 Patent at 8:42-44 (emphasis added)) and "the ***communications means (104)*** use an RF (Radio Frequency) connection in accordance with e.g. Bluetooth, DECT, IEEE802.11 or other wireless protocols." *Id*. at 8:59-61 (emphasis added). Thus, as the VOIP Patents themselves admit, the claimed protocol means and wireless communications means are nothing more than conventional components. And, as set forth in Motorola's Opening Brief, the claims recite using these conventional components according to their generic functions impermissibly claiming the abstract concepts of converting and transmitting data. Motion at 4.

  **2. The Alleged "Improvement" Is Not the Claimed Invention, and the Claims Required "Specialized Equipment" in the Form of a Connecting Unit.**

  Apparently recognizing that the claims recite known computer parts used precisely as they should be used, Buffalo attempts to show an improved computer function. Resp. at 5-7. In doing so, Buffalo points to the specification's criticism of the prior art. *Id*. at 5-6. Yet again, this criticism is directed to the "specialized equipment" that the communication device would otherwise connect to and which would, in turn, process data for Internet transmission. *Id*. at 5-6.

  The specification describes a prior art system that used an RF (radio frequency) interface for the transmission of data using a "base station which . . . handles the access to the Internet, which means that the base station controls/contains the relevant protocols . . . in connection with the Internet." '670 Patent at 1:64-2:6. The specification then appears to criticize the need for a communications device to connect to a base station, which is connected to the Internet. *Id*. at 2:14-20 ("Since the specialized equipment must be physically present at every single location where the [communications devices] are contemplated for use."). From this section of the specification,

4

Buffalo suggests that its claimed invention solved the problem of needing equipment located at the same place as the communications devices. Resp. at 3.

However, Buffalo's own pleadings make clear that *the claims require* a specialized computer as a connecting unit. In the Complaint, Buffalo points to the connection between the accused Motorola phone and an "802.11 router/access point . . . using corresponding wireless communication antennas." Dkt. 1, ¶ 38. A router or access point is a computer that "handles . . . access to the Internet" as the VOIP Patents describe in reference to the prior art. '670 Patent at 2:1-6. Indeed, the specification makes clear that an "Internet access point" is an example of a "connecting unit." *Id*. at 11:19-22 ("[A] *connecting unit*, such as e.g. . . . *Internet access point*, . . . or the like providing the possibility of establishing a connection to the Internet or a connection to another network." (emphasis added)). Thus, a connecting unit and a base station are performing the same exact function and, as the specification expressly states, the communications device of the claims connects to a connecting unit.

Moreover, the specification itself makes clear that such a base station or connecting unit is still needed: "[a] portable communications terminal is achieved hereby which provides telephony via a network or the Internet, which gives a considerable economic advantage. The communications terminal establishes a wireless connection *to a connecting unit which establishes a connection to the relevant network*." '670 Patent at 3:33-38 (emphasis added). Buffalo attempts to bury this inconsistency by repeating that the claimed invention does not need specialized equipment. In doing so Buffalo ignores that the "connecting unit" is required by the specification. *Id*. at 5:43-47 ("[A] connecting unit connected to a wireless near field communications module . . . *the connecting unit adapted to establish a connection to a network and/or the Internet*." (emphasis added)); 11:17-22 ("[C]onnecting unit . . . provid[es] the possibility of establishing a

5

connection to the Internet or a connection to another network."); 11:23-30. Thus the specification makes clear that the connecting unit is the same as the base station it previously criticized. *Id*. at 2:14-20.

The VOIP Patents require a specialized device connecting the communications device to the Internet. Therefore, the claims recite nothing more than a desired function or result, with no improvement over existing functionality. Such claims are ineligible as there is nothing inventive about implementing an abstract idea using "'well-understood, routine, conventional activit[ies]' previously known to the industry." *Alice Corp. Pty. Ltd. v. CLS Banks Int'l*, 573 U.S. 208, 225 (2014) (alteration in original) (citation omitted).

### B. The Claims of the VOIP Patents Differ from Claims Upheld by the Federal Circuit.

Buffalo's attempts to compare its claims to claims that have been upheld by the Federal Circuit fail to demonstrate patent eligibility. Resp. at 7-9. There is a stark contrast between the claims here and those in *Uniloc*, where the specification identified as providing a quantifiable improvement in performance, and those in *SRI*, which claimed a system that was counterintuitive to the art. The claims in the VOIP Patents are simply known, generic uses of general purpose computers. This is precisely what the Supreme Court held ineligible in *Alice*, and courts have continued to hold ineligible since. *Alice*, 573 U.S. at 225; *see, e.g.*, *Two-Way*, 874 F.3d at 1337.

Buffalo first cites to *Uniloc* (Resp. at 7), but in *Uniloc* there was no dispute that the specification described an improvement to known computer functionality. *Uniloc USA, Inc. v. LG Electronics USA, Inc.*, 957 F.3d 1303, 1308 (Fed. Cir. 2020). Specifically, the claims in *Uniloc* required "adding to each inquiry message prior to transmission an additional data field." *Id*. at 1305-06 (citation omitted). The specification in *Uniloc* detailed how adding that field "significantly reduces the response time, enabling secondary stations to respond a fraction of a

6

second later." *Id*. at 1309. There is no such described improvement to computer functionality here. To the contrary, as Buffalo acknowledges, the purported improvement over "conventional systems," was simply eliminating "specialized equipment to handle and control communication of data." Resp. at 6. As detailed above, that specialized equipment was not eliminated. Rather, the specification makes clear that a base station or connecting unit is still required. *Supra*.

Likewise, contrary to Buffalo's assertion, this case is not comparable to *SRI*. Resp. at 8. In *SRI*, the Federal Circuit upheld claims because they overrode the conventional technology and deviated entirely from the normal and expected operation of known computer technology. *SRI Int'l, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295, 1304 (Fed. Cir. 2019). There, unlike here, the claimed invention's arrangement of defense systems and monitoring prevented the normal operation of a network to achieve the desired protection such that conventional functionality would not suffice. *Id*. at 1303-04. As the Federal Circuit made clear, by ***departing from the normal operation***, a benefit of increased security was achieved and that constituted an improvement to computer functionality. *Id*. The *SRI* court confirmed eligibility in part because "the claims actually prevent the normal, expected operation of a conventional computer network" and "improve[d] the technical functioning of the computer and computer networks by reciting a specific technique for improving computer network security." *Id*. at 1304. Neither is the case with the VOIP Patents. Instead, Buffalo admits that the VOIP Patents "used existing equipment" precisely as it is intended to be used in place of specialized equipment. Resp. at 4. Thus, far from supporting eligibility, *SRI* confirms that the claims here—which seek to dispense with the need for specialized technology in favor of conventional components operating according to their conventional functionalities—are ineligible.

7

## II. The Claims Are Not Drawn to an Inventive Concept.

Buffalo sidesteps *Alice* Step Two and simply states that it showed an inventive concept by pointing to removal of the "base station." Resp. at 15. This ignores that the base station is still required by the claims, specification, and by Buffalo's infringement allegations. *Supra*. Further, Buffalo's reliance on *CosmoKey* is misplaced. Resp. at 15-16. In *CosmoKey* the Federal Circuit noted that though the specification "describes three prior art references, none teach the recited claim steps." *CosmoKey Sols. GmbH & Co. KG v. Duo Sec., LLC*, 15 F.4th 1091, 1098 (Fed. Cir. 2021). Further, in *CosmoKey* "the claimed steps were developed by the inventors, are not admitted prior art, and yield certain advantages over the described prior art." *Id*. This is not the case here where the purported improvement over prior art is elimination of a "base station," that, as explained, is still required. *Supra*. In other words, unlike in *CosmoKey*, here the prior art teaches the claim elements, and the claims do no more than use conventional technology according to its intended purpose.

There are no factual disputes regarding an inventive concept, as Buffalo suggests in seeking deferment. Resp. at 16-17. Motorola has pointed to the specification and pleadings to show the claims are abstract uses of known computer parts, and Buffalo has admitted the protocol means and wireless communication means are known and routine. Resp. at 15 ("that wireless IP telephony could be achieved according to the invention by *not* using specialized equipment like the prior art solutions"). There is no fact dispute. Indeed, "[p]atent eligibility is a threshold issue of patentability and a question of law for the court." *Chamberlain Grp., Inc. v. Linear LLC*, 114 F. Supp. 3d 614, 623 (N.D. Ill. 2015) (citations omitted). Further, district courts are encouraged "to assess Section 101 patent eligibility at the outset of the litigation to preserve judicial resources." *Id.* Judgment on the pleadings is proper.

8

### III. Buffalo's Other Arguments Fail.

*Motorola's Choice of Claims to Address.* Buffalo's argument regarding Motorola's selection of claims is a red herring. Resp. at 17-19. Motorola chose claims from each patent to demonstrate what each patent claimed. Buffalo criticizes the choice of claims but offers no evidence regarding how these claims substantively differ. Nor can it, as none of the claims recite anything beyond placing an audio file inside an Internet protocol packet which, in turn, is inside a wireless packet. In any event, the Supreme Court has confirmed that analyzing representative claims is entirely appropriate. *Alice*, 573 U.S. at 224-27 (analyzing "[t]he representative method claim" and finding that "[b]ecause petitioner's system and media claims add nothing of substance to the underlying abstract idea . . . they too are patent ineligible under § 101"); *see also Content Extraction & Transmission, LLC v. Wells Fargo Bank. Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (finding 242 claims invalid based on analysis of one independent claim). In fact, Buffalo recognizes the similarities among the claims and their limitations when arguing all of the patents claim "concrete, technical solutions." Resp. at 6. Accordingly, Motorola's use of representative claims is proper in this case.

*Claim Construction is Unnecessary.* Buffalo identifies no construction that would impact the Court's finding of eligibility. Resp. at 19-20. Instead, Buffalo points to certain mean-plus-function terms, but offers no explanation of what the construction of those terms should be, and, in any event, Motorola addressed these terms. Motion at 4. As Motorola explained, nowhere do the VOIP Patents describe "audio means," "converting means," "protocol means," or "wireless communications means" as any specialized component, structure, or method for performing the functions described. These means-plus-function terms, with or without a claim construction, cannot confer eligibility. *Content Extraction*, 776 F.3d at 1349 (explaining that "claim construction is not an inviolable prerequisite to a validity determination under § 101").

9

*Buffalo's Allegations Cannot be Cured by Amendment.* The specification makes clear that the alleged invention is simply a recitation of known, generic computer concepts operating according to their intended function. There are no facts that Buffalo could plead to make these claims patent-eligible.

**IV.     Conclusion**

Motorola Mobility respectfully requests judgment on the pleadings as to Counts I-IV.

Dated: July 21, 2022

Respectfully submitted,

*/s/ Michael T. Morlock*
Michael R. Weiner
Chelsea M. Murray
MARSHALL, GERSTEIN & BORUN LLP
233 S. Wacker Dr.,
Suite 6300
Chicago, IL 60606
Tel: (312) 474-6300
mweiner@marshallip.com
cmurray@marshallip.com

D. Clay Holloway (*Pro Hac Vice*)
Michael T. Morlock (*Pro Hac Vice*)
Courtney S. Dabbiere (*Pro Hac Vice*)
KILPATRICK TOWNSEND &
STOCKTON LLP
1100 Peachtree St. NE, Suite 2800
Atlanta, GA 30309
Tel: (404) 815-6500
Fax: (404) 815-6555
Holloway, Clay
cholloway@kilpatricktownsend.com
mmorlock@kilpatricktownsend.com
cdabbiere@kilpatricktownsend.com

Steven D. Moore (*Pro Hac Vice*)
KILPATRICK TOWNSEND &
STOCKTON LLP
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300

smoore@kilpatricktownsend.com

Kathleen R. Geyer (*Pro Hac Vice*)
KILPATRICK TOWNSEND &
STOCKTON LLP
1420 Fifth Avenue Suite 3700
Seattle, WA 98101
Telephone: (206) 516-3094
Facsimile: (206) 299-3458
kgeyer@kilpatricktownsend.com

*Attorneys for Defendant,
Motorola Mobility LLC*

11